IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAFAYETTE COLLEGE | : | CIVIL ACTION |
| | : | |
| v. | : | No.   06-5459 |
| | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY, et al. | : | |

### MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                      **November 29, 2007**

In this insurance dispute, I must decide whether United States Fire Insurance Company had

a duty to defend Lafayette College in an underlying litigation.  Then, I must decide whether Selective

Insurance Company owes primary coverage to Lafayette and United States Fire Insurance Company.

United States Fire Insurance Company had no duty to defend Lafayette because Lafayette was

insured only for vicarious liability and the underlying complaint alleged Lafayette and the other

defendants were jointly and severally liable.  Selective's policy with Kunsman and all contracts

require Selective to provide excess coverage, not primary.

**FACTS**

In March of 2005, Jeffrey Biel, an Alan Kunsman Roofing & Siding, Inc. employee, sued

Lafayette College, Telesis Construction, Inc., Irwin & Leighton, Inc., and Masonry Preservation

Services, Inc. after allegedly suffering severe injuries from a 40-foot fall while working on

Lafayette's campus on June 13, 2003.  Lafayette had contracted with Telesis Construction Inc. to

renovate two of Lafayette's lab buildings, and Telesis then hired Kunsman as the subcontractor for

this project.  Lafayette's contract with Telesis required Telesis to indemnify and defend Lafayette

1

for any breach of contract or negligence.[1]  Telesis took out an insurance policy with United States

Fire Insurance Company (USFIC), which addressed coverage for additional insureds, such as

Lafayette.[2]  In the subcontract, Kunsman similarly agreed to indemnify and defend Telesis for any

breach of contract or negligence and incorporated the contract between Telesis and Lafayette.

Kunsman secured insurance with Selective Insurance Company, and Selective agreed to provide

primary coverage if required by any applicable agreement.[3]  Neither the contract or subcontract

required Kunsman to provide primary coverage.

   Lafayette sought coverage and defenses from both USFIC and Selective upon receipt of

Biel's complaint.  Biel alleged Lafayette, Telesis, Irwin & Leighton, Inc., and Masonry Preservation

---

1  The contract reads:
> To the full extent permitted by the Laws, the Construction Manager agrees to defend, indemnify, and hold harmless the College, the Architect and its subconsultants, and the College, and their respective agents, officers, employees, and trustees (collectively, "College's Indemnified Parties") from and against Losses caused, in whole or in part by the breach of the Contract, or intentional, reckless or negligent act or omission of the Construction Manager, its employees or subcontractors in connection with the Project.  The Construction Manager's duty to indemnify shall not be limited by available insurance or by applicable workers' compensation or disability benefit laws.  As respects this indemnity, the Construction Manager hereby expressly waives its right to assert against the College any immunities and defenses that it may have under such laws.

Pl.'s Let. Br. Ex. B (Construction Management Agreement Section 5.5 Construction Manager's Agreement to Indemnify).

2 USFIC's policy language regarding additional insureds reads:  "That person or organization is only an additional insured with respect to liability caused by your negligent acts or omissions at or from your ongoing operations performed for the additional insured at the job indicated by written contract or written agreement."  Pl.'s Let. Br. Ex. H (USFIC Policy with Telesis Section II).

3  Selective's insurance policy with Kunsman reads:
> This coverage shall be primary and not contributory with respect to the person or organization included as an insured by its provisions; any other insurance that person or organization has shall be excess and not contributory with respect to this insurance, but this provision only applies if it is required in the contract, agreement, or permit referred to above.

Pl.'s Let. Br. Ex. A (Selective Policy with Kunsman).

Services, Inc. were jointly and severally liable for his injuries.  He alleged Lafayette owned and maintained control of the property and facilities where Biel was allegedly injured.  Biel Compl. ¶ 9. Selective defended Lafayette, but USFIC argued no duty to defend existed because its policy only covered Lafayette for vicarious liability, not joint and several as Biel alleged.

Biel ultimately won a $ 6.4 million jury verdict.  Lafayette filed post trial motions and initiated this law suit seeking declaratory judgment against USFIC and Selective.  Parties have engaged in limited discovery and submitted letter briefs on whether USFIC had a duty to defend and whether Selective Insurance owes both USFIC and Lafayette primary coverage.

**DISCUSSION**

Pennsylvania law applies to this diversity case.  *See Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508, 509 (E.D. Pa. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)).   In Pennsylvania, courts, rather than juries, generally interpret insurance contracts.  *Mark I Restoration SVC v. Assurance Co. of America*, 248 F. Supp. 2d 397, 402 (E.D. Pa. 2003) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).  Ambiguous policy provisions are to be "construed in favor of the insured and against the insurer," but clear and unambiguous language "must be given effect." *Id.*  A contract is not rendered ambiguous merely because "the parties do not agree on the proper construction."  *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (internal citations omitted).

In determining an insurer's duty to defend, courts must examine the underlying complaint and the relevant insurance policy. "The nature of the [underlying] claim [d]etermines whether the insurer is required to defend." *Mark I Restoration SVC*, 248 F. Supp. 2d at 403 (citing *Springfield Twp. v. Indemnity Ins. Co. of N. America*, 64 A.2d 761, 762 (Pa. 1949)).  "Vicarious liability imposes liability on a person by virtue of his relation to the tortfeasor, whereas joint liability is

imposed on a person by virtue of actions taken in concert with another tortfeasor." *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1182 (Pa. 1992).

USFIC had no duty to defend Lafayette in the Biel litigation because the Biel complaint does not allege Lafayette was vicariously liable for Telesis's negligence. USFIC's insurance policy covers Lafayette as an additional insured "with respect to liability *caused by* [Telesis's] negligent acts or omissions at or from [Telesis's] ongoing operations *performed for* [Lafayette] at the job indicated by written contract or written agreement." Pl.'s Let. Br. Ex. H (Insurance Policy between USFIC and Telesis) (emphasis added). Less explicit insurance policy language has been interpreted to only apply to vicarious liability. *See Harbor Insurance Company v. Lewis,* 562 F. Supp. 800, 802 (W.D. Pa. 1983) ("this policy shall apply to the following additional insureds but only to the extent of liability resulting from occurrences arising out of negligence of [the insured].").

USFIC has agreed to cover Lafayette for liability derived from Telesis's negligence, not Lafayette's own negligence. Biel's complaint, however, alleged Telesis, Irwin & Leighton, Inc., Masonry Preservation Services, Inc., *and* Lafayette were jointly and severally liable for his injuries. Lafayette contends the complaint did sufficiently allege vicarious liability by describing the peculiar risk Telesis created during the job construction such as failing to warn Biel and his employer of the unsafe conditions and exposing Biel to unreasonable conditions. *See generally Nationwide Mutual Insurance Co. v. Phila. Elec. Co.*, 443 F. Supp. 1140 (E.D. Pa. 1977). Biel, however, alleged Lafayette owned, possessed, and maintained control of the property and facilities during the construction and it was separately liable for the Biel's injuries. Biel did not allege Lafayette's negligence derives solely from its relationship with Telesis. Instead, Biel alleged Lafayette's own negligence along with the negligence of the other defendants caused his injuries.

Lafayette argues USFIC had a duty to defend Lafayette because Lafayette's contract with

4

Telesis requires complete defense and indemnification of Lafayette and coverage as an additional insured. USFIC, however, was not a party to this agreement, and its "liabilities are governed by their contracts with the insureds," nothing more. *Transport Indem. Co. v. Home Indem. Co.,* 535 F.2d 232, 235 (3d Cir. 1976). The insurance policy between USFIC and Telesis outlines USFIC's duties to Lafayette, not the contract between Telesis and Lafayette.[4]

Selective's coverage is excess. Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law. *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir. 1985). The insurance policy between Selective and Kunsman states Selective will provide primary coverage only "if required in the contract, agreement, or permit referred to above." Pl.'s Let. Br. Ex. A (Kunsman and Selective Insurance Policy). No agreement or contract between Kunsman and Telesis or between Telesis and Lafayette requires Kunsman's coverage be primary. Because no agreement, contract, or permit required Selective to provide primary coverage, Selective is only required to provide excess coverage.

An appropriate order follows.

---

4 Lafayette also relies on the language of USFIC's Umbrella policy, but the Umbrella policy incorporates only an additional insured as defined by the original policy.

**ORDER**

AND NOW, this 29th day of November, 2007, it is hereby ORDERED a hearing shall be held on December 6, 2007 at 10:00 a.m. in Courtroom 5D for parties to show cause why I should not enter judgment that United States Fire Insurance Company did not owe Lafayette a duty to defend and Selective Insurance Company's coverage is excess.

BY THE COURT:

/s/Juan R. Sánchez, J.
Juan R. Sánchez, J.

6